UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

WILLARD ALLEN,                      CIVIL ACTION
          Petitioner               CV09-0218-A

VERSUS

WARDEN BURL CAIN,                   JUDGE DEE D. DRELL
          Defendants               MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed by petitioner Willard Allen ("Allen") on February 9, 2009, pursuant to 28 U.S.C. § 2261.  Allen is contesting his 1994 conviction on one count of first degree murder by a jury in the 10th Judicial District Court in Natchitoches Parish, Louisiana, and the imposition of a capital sentence.  Allen alleges and the State concedes in its brief that Allen's claims are fully exhausted.  The State further concedes in its brief that Allen's petition is timely.[1]

Allen raises the following grounds for habeas relief:

1. Allen was convicted by a jury comprised of biased jurors who had prejudged Allen's guilt, in violation of Allen's Sixth Amendment right to be tried by an impartial jury.

2. Allen was convicted by a jury that impermissibly

_____

[1] Procedural default and expiration of the limitations period are non-jurisdictional affirmative defenses which may be waived.  Scott v. Johnson, 227 F.3d 260, 263 n.2 (5th Cir. 2000), cert. den., 532 U.S. 963, 121 S.Ct. 1498 (2001), citing Kiser v. Johnson, 163 F.3d 326, 328-329 (5th Cir. 1999).

considered extraneous evidence not presented at trial in violation of Allen's Sixth Amendment right to confront the witnesses against him and his due process rights.

3. The trial judge erroneously denied Allen's for-cause challenge to two jurors who could not serve impartially, violating Allen's right to be tried by an impartial jury.

4. Jurors broke sequestration during trial, in violation of Allen's confrontation and due process rights.

5. The physical evidence and expert testimony regarding that physical evidence was tainted and wholly unreliable such that the State's use of that evidence violated Allen's due process rights.

6. The State withheld exculpatory information that there were other suspects who were not pursued, and that an alleged accomplice who was allowed to enter a "no contest" plea to accessory to armed robbery in this case had acted as a police informant, that undermined the quality of the investigation, in violation of Allen's due process rights as described in Brady v. Maryland.

7. The State used its prosecutorial charging discretion to gain an unfair tactical advantage in Allen's trial, in violation of Allen's due process rights.

8. Allen received ineffective assistance of counsel during the pretrial, trial, and direct appeal of his case.

9. The trial court's termination of Allen's appointed co-counsel, without the knowledge or permission of Allen, violated Allen's rights to counsel and due process.

10. The trial judge's appointment of an inexperienced, unlicensed, and ineffective investigator, and his refusal to make funds available to Allen to hire the investigator of his choosing, violated Allen's rights to counsel and due process.

11. The trial court erroneously denied Allen's motion to suppress physical evidence and an inculpatory statement that were fruits of an unlawful arrest, in violation of Allen's Fourth Amendment rights.

12. The State admitted Allen's coerced inculpatory

statement at trial, in violation of Allen's Fifth
Amendment right against self-incrimination.

13. The State admitted Allen's defectively Mirandized
statement at trial, in violation of Allen's Fifth
Amendment right against self-incrimination.

14. Allen did not knowingly and intelligently waive his
right to testify on his own behalf.

15. The trial judge's denial of Allen's motion to
continue to secure the presence of additional defense
witnesses, at approximately 6 p.m. on the evening of the
first and only day of trial, denied Allen his due process
rights.

16. The trial judge's failure to record important
proceedings, including an extensive argument on defense
counsel's request for a continuance in order to secure
two important defense witnesses, denied Allen his right
to due process.

17. The cumulative effect of errors in Allen's case
renders the guilty verdict unreliable.

Allen requests an evidentiary hearing in his habeas brief.  An
evidentiary hearing is not automatically held in habeas cases.
Pursuant to Habeas Corpus rule 8, the judge determines whether an
evidentiary hearing is warranted after reviewing the answer,
transcripts, records, and other materials submitted and considered,
if the petition is not dismissed.[2]

Unfortunately, the brief attached to Allen's habeas petition
only argues for an evidentiary hearing.  None of the listed grounds
for relief were argued.  However, after the State filed its brief

---

[2] The "Rules Governing Section 2254 Cases in the United
States District Courts" are applicable to capital habeas cases.
Lonchar v. Thomas, 517 U.S. 314, 116 S.Ct. 1293 (1996).

(Doc. 8), Allen argued most of his grounds in his reply brief (Doc. 15). The grounds that Allen failed to brief are waived and will not be considered by this court.

Allen's capital habeas petition is now before the court for disposition.

<u>Facts and Procedural History</u>

The facts of this case as set forth on direct appeal by the Louisiana Supreme Court at 95-KA-1754 (La. 9/5/1996), 682 So.2d 713, are as follows:

> "The following facts were adduced in the guilt phase of the defendant's trial. On September 7, 1993, police responded to a call at the Cherokee Club (Club) in Campti, Louisiana. Upon arrival at the club, police discovered the body of Herman Ferguson, who had been shot six times with a .380 caliber weapon. His body was discovered by Kathy Jacobffy (club bartender) and Mary Messick (club co-owner). There was also evidence that indicated money had been stolen from the club's safe.

> "The investigating officer, Deputy Wade Ebert, learned the defendant, a frequent patron and former part-time employee of the club was at the club with the victim when it closed in the early morning hours of September 7. It was also learned during this initial investigation at the scene that the defendant was known to own a .380 caliber weapon, the same type of weapon used in the murder. Based upon this information, Deputy Ebert requested the defendant be located for questioning.

> "Around 10 p.m. on September 7, Deputy Patrick Custis spotted defendant's white car and stopped him in a parking lot located next door to the Natchitoches Parish Sheriff's Sub-Station in Campti. Deputy Custis radioed Deputy Ebert who drove over from Natchitoches to question the defendant. Upon arriving at the scene, Deputy Ebert asked the defendant if he owned a .380 caliber weapon. The defendant responded that he did, stating that the weapon was in the trunk of his car. The defendant was advised of his Miranda rights and consented to the search

of his vehicle by signing a consent form. The search yielded a .380 caliber semi-automatic handgun, some spent .380 caliber shells, live .380 cartridges, $625.00 in cash and a metal money box commonly used for carrying quarters. These items were seized and the defendant accompanied the officers next door to the substation for further questioning. The defendant told the officers he had loaned the .380 caliber handgun to Gabriel Clark on September 6. The defendant was then released.

"On September 8, Deputy Ebert spoke with Gabriel Clark about the .380 caliber handgun and Clark denied borrowing the gun from the defendant. Deputies then picked up the defendant and brought him to the Natchitoches Sheriff's station for further questioning. At the station, defendant was advised of his rights and signed a waiver of Miranda rights form. The defendant then confessed to the robbery and murder and was arrested.

"The defendant's confession, in its entirety, was admitted at trial. According to his confession, the defendant and Gabriel Clark had discussed robbing the Cherokee Club for about two weeks prior to the actual robbery and murder. The defendant stated that on Monday, September 6, 1993, he and Clark decided it was a good night to rob the club. Around 11 p.m. that evening, the defendant went to the club as it was closing and only Sandra Hicks (a waitress) and the victim were there. The defendant left and again discussed robbing the club with Clark. According to the defendant's confession, he and Clark drove out to the club in the defendant's car. Clark dropped the defendant off a short distance from the club and waited for him at a nearby gas station. The defendant then went to the victim's trailer, which was located next door to the club, and told the victim his car had quit. The victim gave the keys to his truck to the defendant and defendant drove the victim's truck to the gas station where Clark was waiting. The defendant left his car at the gas station and used the victim's truck to drive Clark to his (Clark's) mother's house. According to the defendant, he and Clark were going to meet back at the club to rob it. However, Clark denied any direct involvement in the robbery and murder and was not present at the club when the victim was murdered.FN1

> "FN1. Subsequent to defendant's trial, Clark entered an Alford guilty plea to accessory to armed robbery. See North Carolina v. Alford,

400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162
(1970). He was sentenced to three years at
hard labor with credit for time served.

"The defendant then returned to the victim's trailer.
Upon arriving at the trailer, defendant told the victim
that defendant's car was fixed and that he needed a ride
to pick up his car. The victim gave defendant a ride to
the place defendant claimed his car was located. After
the victim and defendant were unable to locate
defendant's car, they returned to the victim's trailer.
Once they were back at the trailer, the defendant told
the victim he needed the combination to the club's safe.
The victim inquired as to what was going on and the
defendant pulled a gun on him. The victim then gave the
defendant the combination; however, the defendant could
not remember it. It was decided that the victim would
open the safe himself. The defendant and the victim then
walked next door to the club. According to the defendant,
the victim opened the safe and then attacked the
defendant. The defendant claims the gun discharged while
he was trying to fend off the victim's attack. After the
gun discharged, defendant removed the money from the safe
and fled the club.

"James Calhoun was appointed by the trial court as lead
counsel for the defendant. On September 29, 1993, a grand
jury indicted Willard Allen for first degree murder.
Allen was arraigned on October 15, 1993, at which time he
entered a not guilty plea. Several pre-trial motions were
filed, including a Motion to Suppress and a Motion for
Funds for a psychiatrist and private investigator. The
Motion to Suppress was denied but the Motions for funds
for a psychiatrist and private investigator were granted.
After several continuances the case went to trial on
October 11, 1994.

"At trial, the coroner testified the victim had been shot
six times. The first bullet, which inflicted the fatal
wound, went through the chest from front to back.
Defendant was also shot several times in the abdominal
area, in the arm and in the back of the head.

"The jury found the defendant guilty of first degree
murder and determined he should be sentenced to death
based upon the presence of two aggravating circumstances:
(1) the perpetrator was engaged in the commission of an
armed robbery (La.C.Cr.P. art. 905.4(A)(1)); and (2) the

6

offense was committed in an especially heinous, atrocious, or cruel manner (La.C.Cr.P. art. 905.4(A)(7)). The prosecutor made no opening statement in the penalty phase of the trial; however, he did introduce by reference all of the trial testimony and did offer into evidence a photograph of the victim with his daughter.

"The defendant was formerly sentenced to death by lethal injection on October 17, 1994. After sentencing, the defendant filed a motion for a new trial based upon evidence that the trial judge violated the rule of sequestration by making improper contact with the members of the jury. On October 26, 1994, a hearing was held on this matter and the defendant's motion was denied. On October 28, 1994, the trial court resentenced defendant to death by lethal injection. This direct appeal followed."

<u>Law and Analysis</u>

<u>Rule 8(a) Resolution</u>

This court is able to resolve the merits of this petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. <u>Moya v. Estelle</u>, 696 F.2d 329, 332-33 (5th Cir. 1983); <u>Easter v. Estelle</u>, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

<u>Standard of Review</u>

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28

U.S.C. § 2254(a).

      Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding.  Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2).  <u>Martin v. Cain</u>, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

      A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts.  <u>Martin</u>,

246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable.  A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable.  Martin, 246 F.3d at 476, and cases cited therein.

When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief unless the harmlessness determination itself was unreasonable.  Mitchell v. Esparza, 540 U.S. 12, 124 S.Ct. 7 (2003).  In habeas proceedings, a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710 (1993).[3]  Fry v. Pliler, 551 U.S. 112, 121-122, 127 S.Ct. 2321, 2328 (2007).  The State bears the burden of persuasion as to the harmlessness of the error.  Fry, 551 U.S. at 121 at n.3, 127 S.Ct. at 2328 at n.3.

Grounds Nos. 1 & 2 - Impartial Jury/Confrontation Clause

First, Allen contends he was convicted by a jury comprised of

---

[3] An error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict. Brecht, 507 U.S. at 631, quoting Kotteakos v. U.S., 328 U.S. 750, 776, 66 S.Ct. 1239 (1946).

biased jurors who had prejudged his guilt in violation of his Sixth Amendment right to be tried by an impartial jury.  Allen contends, specifically, that jurors James Chester, Bonnie Matthews, and Melba Sparks were biased.  Allen further contends he was convicted by a jury that impermissibly considered extraneous evidence not presented at trial, in violation of Allen's Sixth Amendment right to confront the witnesses against him and his due process rights. Allen is referring to facts that were learned by juror James Chester prior to his jury service which Chester shared with the other jurors.

1.

One touchstone of a fair trial is an impartial trier of fact, "a jury capable and willing to decide the case solely on the evidence before it."  Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors.  Demonstrated bias in the responses to questions on voir dire may result in a juror's being excused for cause; hints of bias not sufficient to warrant a challenge for cause may assist parties in exercising their peremptory challenges. McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554, 104 S.Ct. 845, 849 (1984).  The Fifth Circuit stated in U.S. v. Scott, 854 F.2d 697, 698 (5th Cir. 1988), that the inclusion of a biased juror in a criminal jury effectively denies the defendant the right to a fair trial.  However, only extreme situations

justify such a finding.  Andrews v. Collins, 21 F.3d 612, 620 (5th Cir. 1994), cert. den., 513 U.S. 1114, 115 S.Ct. 908 (1995).  Some examples of extreme situations might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.  Andrews, 21 F.3d at 620, citing Smith v. Phillips, 455 U.S. 209, 222, 102 S.Ct. 940, 948 (1982).  Also, Solis v. Cockrell, 342 F.3d 392, 396 (5th Cir. 2003), cert. den., 540 U.S. 1151, 124 S.Ct. 1149 (2004).

Allen contends that jurors James Chester, Bonnie Matthews, and Melba Sparks were biased and denied him a fair trial.  The bias of a juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as a matter of law.  Solis v. Cockrell, 342 F.3d 392 (5th Cir. 2003), cert. den., 540 U.S. 1151, 124 S.Ct. 1149 (2004).  In most cases, a hearing to determine whether a juror was actually biased against the defendant is constitutionally sufficient, but in certain extreme situations a court my find a jury biased as a matter of law.  Solis, 342 F.3d at 395.  Automatically presumed bias deals mainly with jurors who are related to the parties or who were victims of the alleged crime itself.  Solis, 342 F.3d at 399 n. 42, anc cases cited therein. The case at bar involves only issues as to whether the jurors were biased in fact, or actual bias.

11

2.

Bonnie Matthews testified that she had known potential State witness Deputy Tommy Solomon all his life, but that would not cause her to give any more weight to the State's case than to the defense (Tr. Vol. 3, p. 34).  Matthews testified that, although she always reads the local newspapers, she did not recall reading anything about the case (Tr. Vol. 3, p. 37), and testified that if she did recall something later, she could put it out of her mind and consider the evidence (Tr. Vol. 3, p. 38).  Neither Allen nor the State challenged Matthews and she was accepted as a juror (Tr. Vol. 3, p. 40).[4]

Allen claims Matthews was a biased juror because she had known Deputy Solomon, one of the deputies who involved in the case, all

---

[4] Matthews, Sparks, and Chester were all accepted as jurors without challenge.  Normally, federal habeas review is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice.  Lott v. Hargett, 80 F.3d 161, 164 (5th Cir. 1996).  Also, Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546 (1991).  A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief.  Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997), cert. den., 523 U.S. 1125, 118 S.Ct. 1811 (1998).

However, in this case, although no challenge was made to these jurors, the state district court judge failed to impose a procedural bar and ruled on the merits of the claims on post-conviction relief (Tr. Vol. 16), and the Louisiana Supreme Court denied writs without comment.  State ex rel. Allen v. State, 2007-2430 (La. 2/6/09), 999 So. 2d 777.  Therefore, these claims are not procedurally barred from consideration by this court.

of his life.  Matthews stated she would not give Deputy Solomon's testimony more weight than any other witness.  It is noteworthy that Deputy Soloman did *not* testify as a witness at trial. Matthews clearly stated her ability to serve as a fair and impartial juror and Allen has not presented any evidence to indicate that she did not do so.  Since friendship with the victim of the crime does not, standing alone, justify a finding of bias, Solis, 342 F.3d at 396, friendship with a deputy who was not a witness at trial also does not justify a finding of bias. Therefore, Allen has failed to carry his burden of proving Matthews was biased against him.

3.

Melba Sparks testified during voir dire that her husband was a state police officer for about eighteen years, but that she would not give more weight to a law enforcement officer's testimony because of that fact (Tr. Vol. 3, p. 59).  Sparks testified that she did not personally know any of the officers who may be called as witnesses (Tr. Vol. 3, p. 59).  Sparks testified that she could listen to the witnesses and make up her mind independently (Tr. Vol. 3, p. 59).  Sparks also testified that she may be inclined to have more confidence in the truthfulness of a law enforcement officer (Tr. Vol. 3, p. 60), but that she could serve as a fair and impartial juror that would be able to return a verdict of not guilty if the State failed to carry its burden of proof (Tr. Vol.

13

3, p. 61).  Both counsel accepted Sparks as a juror (Tr. Vol. 3, p. 62).

Allen contends Sparks was biased because her husband had been in law enforcement for eighteen years.  However, Sparks testified she could decide the case based on the evidence and return a "not guilty" verdict if necessary.  Neither the mere relationship to a law enforcement officer, nor the fact that one was formerly a police officer, is of itself reason to exclude one from jury service.  State v. Williams, 447 So.2d 495 (La. App. 3d Cir.), writ den., 450 So.2d 969 (La. 1984), citing State v. Smith, 430 So.2d 31 (La. 1983), and State v. Heard, 408 So.2d 1247 (La. 1982).  Allen has not presented any evidence to show that Sparks' husband's former employment caused her to be impartial and that she did not serve as a fair an impartial juror during his trial.  A habeas petitioner has the burden of proving facts in support of his claim.  Unsupported conclusory allegations do not warrant habeas relief.  Uresti v. Lynaugh, 821 F.2d 1099, 1103 (5th Cir. 1987); Wilson v. Butler, 813 F.2d 664, 671 (5th Cir.), on rehearing, 825 F.2d 879, 881 (5th Cir. 1987), cert. den., 484 U.S. 1079, 108 S.Ct. 1059 (1988); United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983), cert. den., 467 U.S. 1251, 104 S.Ct. 3534 (1984); United States v. Jones, 614 F.2d 80, 82 (5th Cir.), cert. den., 446 U.S. 945, 100 S.Ct. 2174 (1980).  Therefore, this claim is also meritless.

4.

Allen also alleges that juror James Chester III served as a biased juror.  Chester testified at voir dire that he was employed by the Natchitoches Fire Department, was enrolled in the Louisiana National Guard, knew most of the witnesses, had heard most aspects of the case discussed prior to trial, and was unable to state whether he could put his personal feelings or opinions of the case aside and decide the case based only on the evidence (Tr. Vol. 3, p. 167).  Chester further testified that he did not know the defendant, had never been to the Cherokee Lounge (where the offense took place), and did not know the victim or the lounge co-owner, Mary Messick (Tr. Vol. 3, p. 168).  Chester also testified that he would miss a lot of work if he had to serve on the jury, which would cause a financial strain, and that he had a three day drill weekend that weekend with the National Guard (Tr. Vol. 3, p. 168). Both attorneys accepted Chester as a juror (Tr. Vol. 3, p. 171), even though Allen's attorney still had two peremptory challenges left (Tr. Vol. 3, p. 169).

Allen submitted an affidavit from Chester which essentially re-stated what he testified to in voir dire regarding knowing witnesses and having heard the case discussed by them prior to trial (Doc. 1, Ex. G).  Chester also stated that he had formed an opinion regarding Allen's guilt before the trial, was very surprised he was chosen to serve on the jury, and stated that he

15

shared his "knowledge" and opinion concerning Allen's guilt with the other jurors during deliberations (Doc. 1, Ex. G).  Finally, Chester stated in his affidavit that, when the sentencing phase of Allen's trial began, one of the jurors told the rest that an offer had been made to Allen to plead guilty in exchange for a life sentence, and that Allen had rejected the offer (Doc. 1, Ex. G). Chester stated in his affidavit that, although many of the jurors, including himself, had been reluctant to impose the death penalty prior to hearing that information, that information strongly influenced their deliberations, and he felt it indicated a lack of responsibility and lack of remorse on Allen's part (Doc. 1, Ex. G).

The state district judge ruled on Allen's motion for post-conviction relief without a hearing and held Chester's affidavit was inadmissible as evidence pursuant to La.C.E. art. 606(B). Allen argues the trial judge erred refusing to consider Chester's affidavit, and the State argues it should not be allowed.

The Sixth Amendment right to a jury trial, enforceable against the states as a result of incorporation through the Fourteenth Amendment's due process clause, implies at the very least that the evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.  Pyles v. Johnson, 136 F.3d 986, 992 (5th Cir.), cert. den., 524 U.S. 933, 188 S.Ct. 2338 (1998), and cases cited

therein.   Interests of comity and federalism, as well as the State's interest in the finality of convictions that have survived direct review within the state court system, mandate that federal courts apply a more deferential standard of review in evaluating a claim brought in a collateral attack on a state conviction and sentence.  <u>Pyles</u>, 136 F.3d at 992.

Mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief.  <u>Panzavecchia v. Wainwright</u>, 658 F.2d 337, 340 (5th Cir. 1981).  Thus, claims challenging the exclusion or inclusion of evidence based on state law do not afford a basis for federal habeas corpus relief.  Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law.  In reviewing state court evidentiary rulings, the federal habeas court's role is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness under the Due Process Clause.  <u>Castillo v. Johnson</u>, 141 F.3d 218, 222 (5th Cir.), cert. den., 524 U.S. 979, 119 S.Ct. 28 (1998), and cases cited therein.

Louisiana Code of Evidence article 606(B) provides in pertinent part:

> "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or

concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention."

The prohibition of La.C.E. art. 606(B) is intended to preserve the finality of jury verdicts and the confidentiality of discussions among jurors.   However, the jurisprudence has established the prohibition against juror testimony is not absolute and must yield to a substantial showing that the defendant was deprived of his constitutional rights.   Well-pleaded allegations of prejudicial juror misconduct violating a defendant's constitutional rights will require an evidentiary hearing at which jurors shall testify. State v. Smith, 2006-0820 (La. App. 1st Cir. 12/28/06), 952 So.2d 1, 15, writ den., 2007-0211 (La. 9/28/07), 964 So.2d 352.   The issue may be raised pursuant to a motion for new trial whenever the defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict of judgment.   La.C.Cr.P. art. 851(4).

Allen claims the state district judge erred in holding that Chester's affidavit was inadmissable to show extraneous information was introduced to the jury as to the fact that Allen had turned down a plea bargain for life imprisonment, and to show Chester shared with the other jurors what he had learned about the case prior to trial.   On habeas review, Allen must show that error was so extreme

18

that it constituted a denial of fundamental fairness under the Due Process Clause.[5]

In Louisiana, no juror is competent to impeach the verdict of the jury on which he served.[6]  The rule is founded on the public interest in finality of jury verdicts and in encouraging frankness of discussion among jurors in their deliberations.  State v. Ledet, 298 So.2d 761 (La. 1974).  This firmly established rule prevents jurors from impeaching their verdict by disclosure of jury deliberations or even by testimony of misconduct within the jury room.  State v Durr, 343 So.2d 1004 (La. 1977).

Louisiana courts distinguish between testimony concerning juror misconduct in their deliberations, as to which their testimony is incompetent, and testimony concerning misconduct by a third party independent of jury deliberations.  The statutory prohibition against jurors impeaching their verdict does not extend to testimony establishing unauthorized communications by third parties to the jury which might influence their verdict.  State v. Charles, 377 So.2d 344, 345-346 (La. 1979), amended in other part, 397 So.2d 469

---

[5]  In Louisiana, testimony regarding plea negotiations is generally inadmissible, pursuant to Louisiana Code of Evidence article 410.  The protections afforded by La.C.E. art. 410 are designed to encourage and protect plea bargain negotiations.  State v. Cinel, 95-1723 (La. App. 4th Cir. 8/18/95), 660 So.2d 887, 891.

[6] This is also the rule in federal court.  Federal Code of Evidence rule 606(b); Summers v. Dretke, 431 F.3d 861 (5th Cir. 2005), cert. den., 549 U.S. 840, 127 S.Ct. 353 (2006), and cases cited therein.

(La. 1980); State v. Velez, 588 So.2d 116 (La. App. 3d Cir. 1991), writs den., 592 So.2d 408 (La. 1992), cert. den., 505 U.S. 1220, 112 S.Ct. 3031 (1992).  In the case at bar, the extraneous information concerning the alleged plea bargain offer, imparted to Allen's jury during its capital sentencing deliberation, was imparted by one of the jurors.   There is no evidence that the information was improperly given to that juror by a third party during the trial and sentencing. Therefore, despite Chester's unverified statement about an unidentified juror's misconduct in deliberations, in sharing unverified information with the other jurors which was not part of the evidence introduced at trial, it was part of the discussion during the jury's deliberations and there is no evidence concerning the weight given it, if any, by the other jurors.   Testimony and affidavits concerning the jury's thought processes during deliberations are prohibited.

As to Chester's statements that, during deliberations, he shared with the other jurors the information he learned about the case prior to trial, Chester did not state specifically what that information was and whether it had also been introduced into evidence as trial.  There is nothing in the record to show the other jurors gave Chester's statements, whatever they were, more weight than they gave the evidence at trial or that they gave them any weight at all. Therefore, Chester's affidavit concerns nothing more than one of the discussions among the jurors during their

deliberations.

Finally, as to Chester's alleged bias, Chester did not state that his unspecified "prior knowledge" was not introduced into evidence at trial and does not state that he did not judge the case fairly and based on the evidence.  It is not required that the jurors be totally ignorant of the facts and issues involved in a case.  <u>Irvin v. Dowd</u>, 366 U.S. 717, 722-23, 81 S.Ct. 1639, 1642 (1961).  To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.  <u>Irvin</u>, 366 U.S. at 723, 81 S.Ct. at 1642.  Therefore, the fact that Chester had an opinion as to Allen's guilt prior to trial does not prove Chester was a biased juror.  Chester's statements that, after the trial, he still believed Allen was guilty and shared that belief with the other jurors during deliberations does not prove Chester was biased or that his opinion was not based on the evidence introduced at trial; moreover, those statements constitute part of the discussions during jury deliberations the state judge correctly ruled were inadmissible to impugn the verdict.  This court will not infer from Chester's statements on voir dire that Chester refused to consider the evidence presented at trial, or that the other

21

jurors gave Chester's opinion more weight than the evidence or their own opinions.  Therefore, Allen has not carried his burden of proving Chester was a biased juror.

Since Chester's affidavit refers to nothing more than discussions among the jurors during their deliberations and does not indicate any inappropriate attempt by a third party to influence the jury, the state court did not err in ruling it was inadmissable. Since Allen has not proven his trial was rendered fundamentally unfair by the exclusion of Allen's affidavit, this ground for relief is meritless.

Ground No. 3 – Challenges for Cause

Allen contends the trial judge erroneously denied his challenges for cause as to potential jurors Linda Judy Dixon and Clifton Smith, thereby forcing Allen to use all of his peremptory challenges and allowing three other biased jurors to be seated on the jury.  It is noted, however, that juror Matthews (Tr. Vol. 3, pp. 33-41) was seated without challenge before prospective juror Dixon (Tr. Vol. 3, pp. 41-51)) and Smith (Tr. Vol. 3, pp. 140-145) were called and challenged during voir dire.  Juror Sparks (Tr. Vol. 3, pp. 58-63) was seated without challenge before prospective juror Smith (Tr. Vol. 3, pp. 140-145) was called and challenged during voir dire before.  Therefore, Allen was not forced to use all of his peremptory challenges before Matthews and Sparks were chosen as jurors.  Finally, it is noted that Allen still had two peremptory

challenges left at the time Chester was accepted and seated as a juror (Tr. Vol. 1, p. 17). Therefore, was not "forced" to allow biased jurors to be seated on his jury.

Peremptory challenges are not constitutional rights. The loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. Herman v. Johnson, 98 F.3d 171, 174 (5th Cir. 1996), cert. den., 520 U.S. 1123, 117 S.Ct. 1262 (1997). Also, Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273 (1988). Therefore, as a general rule, a trial court's erroneous venire rulings do not constitute reversible constitutional error so long as the jury that sits is impartial. Jones v. Dretke, 375 F.3d 352, 355 (5th Cir. 2004), and cases cited therein.

Pursuant to Ross v. Oklahoma, the court must determine whether the jurors that actually sat were impartial as required by the Sixth Amendment. Jones v. Dretke, 375 F.3d 352, 355 (5th Cir. 2004). Therefore, any claim that the jury was not impartial must focus not on the peremptorily challenged jurors, but on the jurors who ultimately sat. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. Soria v. Johnson, 207 F.3d 232, 241 (5th Cir. 2000)(capital case). Also,

23

Nichols v. Scott, 69 F.3d 1255 (5th Cir. 1995).

The standard for determining when a venire member may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and his oath. A state trial court's refusal of a challenge for cause is a factual finding entitled to a presumption of correctness. Soria v. Johnson, 207 F.3d 232, 241 (5th Cir.), cert. den., 530 U.S. 1286, 121 S.Ct. 2 (2000)(capital case).

As stated above, a trial court's erroneous venire rulings do not constitute reversible constitutional error so long as the jury that sits is impartial. Although Allen has not shown that he had a biased jury, the undersigned also finds that Allen's claims regarding erroneous rulings on his challenges for cause on voir dire are meritless, as discussed below.

Allen argues that he challenged Linda Judy Dixon for cause because she testified during voir dire that she could not serve impartially, and she was not rehabilitated by the prosecutor or the court before being allowed to serve on the jury.

Dixon testified that the victim's girlfriend, Kelly Trichel, was a childhood friend of her daughter's (Tr. Vol. 3, p. 42), although her daughter was closer to Kelly's sister than to Kelly at the time the crime was committed (Tr. Vol. 3, p. 45). Dixon also testified that her knowledge of the people might unduly influence

her (Tr. Vol. 3, p. 42) but, on further questioning, she testified that she could put aside her knowledge of the people in the case and consider only the evidence in deciding Allen's guilt or innocence (Tr. Vol. 3, p. 42). Dixon testified that, although she had heard about the victim's death from her daughter, she did not recall any specific details, she had not heard or read about the case in any media reports, she had not talked about the case with anyone since the initial discussion with her daughter, she did not personally know any of the potential witnesses in the case, and she did not know the victim's name (Tr. Vol. 3, pp. 43-44, 46). Dixon promised to listen to each witness and make up her own mind as to their credibility (Tr. Vol. 3, p. 44). In response to Allen's questions, Dixon testified that she would like to think she could decide the case fairly and impartially, but she did not know if she could (Tr. Vol. 3, pp. 47-48). However, when the State asked if she could wait to make up her mind as to Allen's guilt or innocence until after she heard all of the evidence, Dixon responded that she could (Tr. Vol. 3, p. 48).

Allen asked that Dixon be excused because she was "acquainted with some of the victims" (Tr. Vol. 3, p. 48), and the trial judge denied Allen's request. A state trial judge's refusal of a challenge for cause is a factual finding entitled to a presumption of correctness. Soria, 207 F.3d at 241. La.C.Cr.P. art. 797 lists the grounds for challenges for cause; being acquainted with the

girlfriend of the victim is not within the scope of any of the enumerated grounds.   Friendship with the victim of a defendant's alleged crime does not, standing alone, justify a finding of bias. Solis, 342 F.3d at 396; U.S. v. Wilson, 116 F.3d 1066, 1087 (5th Cir. 1997), rev'd in other part, 161 F.3d 256 (5th Cir. 1998).   A fortiorari, acquaintance with the girlfriend of the victim does not justify a finding of bias.   Finally, contrary to Allen's assertions in his brief, Dixon did not state that she had a preconceived opinion as to Allen's guilt or innocence; she stated twice that she would be able to judge the case after she had heard all of the evidence.   Therefore, Allen has not shown that the trial judge erred in failing to grant his challenge for cause against Dixon.

Allen also contends the trial judge erred in failing to grant his challenge for cause as to potential juror Clifton Smith, which forced Allen to use another of his peremptory challenges.   Smith testified that he knew the victim, Herman Ferguson, and Mary Messick, with whom Ferguson co-owned the Cherokee Club (where Ferguson was killed) (Tr. Vol. 3, p. 141).   Smith testified that he and some of his co-workers would stop at the club on the way home from work and have a beer with Ferguson (Tr. Vol. 3, p. 141); Smith testified that he was acquainted with Ferguson through his business for about two years, but they did not visit each other at their homes (Tr. Vol. 3, p. 143).   Smith testified that he did not know if he could put aside the fact that he knew Ferguson and be a fair

and impartial juror (Tr. Vol. 3, pp. 141-142).  Smith testified that he had talked about the case at work, had read about it in the newspaper, and had formed an opinion, but would try to listen to the evidence, decide the case based on the evidence alone, and be fair (Tr. Vol. 3, p. 143).  Smith then testified that he would vote the way the evidence indicated and would not be uncomfortable with returning a verdict of not guilty if necessary (Tr. Vol. 3, p. 144).  Smith also testified that he knew Mary Messick from the club, but that if she was called as a witness, he would try not to give her testimony more weight because he knew her (Tr. Vol. 3, p. 144).

Allen challenged Smith for cause because Smith was acquainted with the victim, Ferguson, had spoken with Mary Messick since Ferguson's death, and had testified he would "try" not to give Messick's testimony more weight than others (Tr. Vol. 3, p. 146).  The trial judge denied the challenge for cause because he was "impressed" with Smith's testimony that he had not formed an opinion (Tr. Vol. 3, p. 146).  However, contrary to the trial judge's statement, Smith testified that he *had* formed an opinion (Tr. Vol. 3, p. 143):

> "Q. But based upon that article that you read, the articles that you may have read, did you form an opinion as to what happened?
> "A. Well, I guess I pretty well formed an opinion."

Therefore, the trial judge's decision to deny Allen's challenge for cause as to Smith was based on an error.  However, Allen's challenge for cause does not clearly fall within the scope of La.C.Cr.P. art.

27

797(3), "The relationship,... by... friendship,... between the juror and... the person injured by the offense,... is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict." Smith's testimony clearly indicated that he only had a business acquaintance with the victim, and he testified that he could decide the case based on the evidence.  Moreover, friendship with the victim of a defendant's alleged crime does not, standing alone, justify a finding of bias.  Solis, 342 F.3d at 396; Wilson, 116 F.3d at 1087.  Therefore, the trial judge did not err in denying Allen's challenge for cause of Smith.

Since the trial judge did not err in denying Allen's challenges for cause and Allen has not shown that he had a biased jury, this ground for relief is meritless.

Ground No. 4 - Sequestration

Next, Allen contends the jurors violated their sequestration during trial, in violation of Allen's confrontation and due process rights.  Allen argues in his reply brief that the State did not address this issue in its brief.  However, Allen did not address this issue in his habeas petition or reply brief.  Allen has not explained how sequestration was broken, by whom, how it violated his constitutional rights, and why it should not be considered a harmless error by this court.  Allen has the burden of proving facts in support of his claim.  As already stated, unsupported conclusory allegations do not warrant habeas relief.  Uresti, 821 F.2d at 1103;

Wilson, 813 F.2d at 671; Cockrell, 720 F.2d at 1427; Jones, 614 F.2d at 82.  Since this issue is not argued by Allen in his brief, it will not be considered.

Ground No. 5 - Physical Evidence

Allen also contends the physical evidence and expert testimony regarding that physical evidence was tainted and wholly unreliable, so the State's use of that evidence violated Allen's due process rights.  Allen is referring to the State's loss of a live round from the Lorcin clip that was seized during the search of Allen's car and the unreliable expert testimony regarding a bullet fragment evidence.

Allen alleges that, on September 7, 1993, Deputy Ebert searched Allen's car and seized, from the car's console, the clip of Allen's Lorcin .380 with four live rounds.  However, on September 9,1993, Deputy Tommy Solomon submitted to the North Louisiana Criminalistics Laboratory "one plastic evidence bag containing one brown paper sack containing three (3) .380 caliber cartridges."  Ten months later, Deputy Ebert produced another bullet fragment to the crime lab that was allegedly recovered from the Cherokee Club, which had not been secured for the previous ten months, and which was found to "match" the Lorcin .380 taken from Allen's car.  Allen further alleges that expert Richard Beighley applied a disreputable pseudo-scientific method to evaluate the mishandled evidence and conclude the fragment "matched" the Lorcin taken from Allen's car.

Allen argues that neither the State in its answer nor the state court addressed the due process aspect of the State's improper handling of the physical evidence that was admitted against Allen, and states, vaguely, that a State may not knowingly use false evidence.  Allen further alleges (again vaguely) that errors of state law, including evidentiary rulings such as the qualification of an expert using unreliable methodology and relying on tainted physical evidence, warrant habeas relief.  Allen concludes that the introduction of Beighley's testimony and his reliance on tainted physical evidence denied Allen his right to due process.

Allen has not asserted what "due process aspect" he is alleging, what was wrong with Beighley's testimony and methodology, or why the evidence was "tainted," nor has he cited any cases, stated specifically what "false evidence" the State used, or submitted any proof that the (unidentified) evidence is false.

It bears repeating.  A habeas petitioner has the burden of proving facts in support of his claim.  Unsupported conclusory allegations do not warrant habeas relief. Uresti, 821 F.2d at 1103; Wilson, 813 F.2d at 671; Cockrell, 720 F.2d at 1427; Jones, 614 F.2d at 82.  Since this issue is not argued, it will not be considered.

Allen has not shown that false evidence was used by the State, or even alleged what that evidence was.[7]  Allen has not alleged what

---

[7] This court very strongly discourages unsubstantiated accusations of fraud against opposing counsel.

unreliable method Beighly used to evaluate the bullet fragment, has not shown why it was scientifically unreliable, has not alleged what other method should have been used, and has not shown that a different method would have yielded a different result.  Although Allen contends he should have an evidentiary hearing on this issue, he has not shown or even alleged what specific prejudice he has suffered.  In other words, Allen has not shown that his trial was rendered fundamentally unfair.

This ground for relief is also meritless.

Ground No. 6 - Exculpatory Evidence

Next, Allen contends the State withheld exculpatory information that there were other suspects who were not pursued and that an alleged accomplice who was allowed to enter a "no contest" plea to accessory to armed robbery in this case had acted as a police informant.  Allen contends the quality of the investigation in his case was undermined, in violation of Allen's due process rights as described in Brady v. Maryland.

In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-07 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.  Wilson v. Whitley, 28 F.3d 433, 434 (5th Cir. 1994), cert. den., 513 U.S. 1091, 115 S.Ct. 754 (1995), citing U.S. v.

Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985).  In order
to establish that evidence falls within the purview of Brady, a
petitioner must establish that the evidence was (1) suppressed, (2)
favorable, and (3) material.  Williams v. Whitley, 940 F.2d 132, 133
(5th Cir. 1991).  The determinative question is whether the evidence
was material; that is, whether there is a reasonable probability
that, had the report been disclosed to the defendant the result of
the proceeding would have been different.  Wilson v. Whitley, 28
F.3d at 434, citing Bagley, 473 U.S. at 682, 105 S.Ct. at 3383.  A
reasonable probability is a probability sufficient to undermine
confidence in the outcome.  Spence v. Johnson, 80 F.3d 989, 994 (5th
Cir.), cert. den., 519 U.S. 1012, 117 S.Ct. 519 (1996), citing
Bagley, 413 U.S. at 682, 105 S.Ct. at 3383.  The materiality of
Brady material depends almost entirely on the value of the evidence
relative to the other evidence mustered by the state.  Wilson v.
Whitley, 28 F.3d at 439.  The prosecutor is not required to deliver
his entire file, but only to disclose evidence favorable to the
accused that, if suppressed, would deprive the defendant of a fair
trial.  Wilson, 28 F.3d at 435.

According to Allen, the State failed to turn over "documents"
pertaining to the role of Gabriel Clark as an informant with the
Sheriff's Department, Clark's plea negotiations and plea deal, and
"other information."  Allen argues that Clark was labeled as an
accomplice to the crime in a pretrial hearing by the trial judge.

Allen contends that, had he had the information about Clark's plea agreement, he could have cross-examined Deputy Ebert concerning the agreement.   Allen contends the information about Clark's plea agreement was exculpatory.

When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the general <u>Brady</u> rule.  <u>Giglio</u>, 405 U.S. at 154, 92 S.Ct. at 766, citing <u>Napue</u>, 360 U.S. at 269 ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.").

First, it is noted that Gabriel Clark was not a witness at Allen's trial;[8] therefore, he could not be impeached.  Second, since Allen admits he does not know when Clark agreed to plead guilty to a reduced charge and the State contends there was no plea bargain to reveal, there apparently was no deal to disclose prior to or during Allen's trial.  The State argues in its brief that there was never any plea bargain to disclose, and the state courts found that

---

[8] The State did not call Gabriel Clark to testify.  However, Allen attempted to call Clark as a witness, but was not permitted to do so until Clark's attorney was notified and present.  Allen had subpoenaed Clark, but Clark was incarcerated at the time (in the same building in which Allen's trial was taking place). Although the trial judge offered to grant Allen time in which to do so, Allen declined the opportunity and abandoned  his attempt to have Clark testify.

to be the case.

Third, this court has not found any law requiring the State to disclose a plea bargain with an informant who is not a trial witness, and Allen has not cited any authority to support that argument.  The purpose of a disclosing plea agreement with a witness is, as stated above, to disclose to the finder of fact any factor which may affect that witness's credibility.  When a person with whom a plea bargain is confected does not testify, that person has no influence on the finder of fact and the issue of that person's credibility is irrelevant at the time of trial.  The fact that law enforcement may have, early in the case, relied on an informant who is not entirely credible is irrelevant.  If that informant does not testify at trial, the State must provide other evidence which proves the defendant's guilt prove beyond a reasonable doubt.

Fourth, Allen has not explained how a plea bargain with Gabriel Clark, confected after Allen's conviction, would have been exculpatory to Allen.  In other words, Allen has not demonstrated how he was prejudiced by this alleged error.

Since Allen has not proven a <u>Brady</u> violation occurred, this ground for relief is meritless.

<u>Ground No. 7 - Charging Discretion</u>

Allen next argues the State used its prosecutorial charging discretion to gain an unfair tactical advantage in Allen's trial,

in violation of Allen's due process rights.[9]  Allen apparently bases this argument on the State's "role" in rendering Gabriel Clark unavailable to testify at trial.   The State argues that Allen's confession implicated Clark as a co-conspirator to robbery, which led to Clark's arrest; Clark later pleaded guilty to being involved in the robbery scheme.

Clark was imprisoned in the Natchitoches Parish Jail pursuant to a charge of armed robbery (Tr. Vol. 4, p. 165-166).   Allen appears to argue that the armed robbery charge against Clark, and his resulting imprisonment, is why Clark was unavailable to testify at Allen's trial and therefore the prosecutor abused his charging discretion.   The trial judge informed Allen's counsel that Clark would not testify without his counsel present.   The trial judge noted that Allen's counsel was aware of Clark's attorney, but had failed to notify him that he had subpoenaed Clark to testify.

The fact that a witness is incarcerated simply does not make that witness unavailable to testify.  The State did not "abuse" its charging discretion by charging Clark with armed robbery.  There is absolutely no merit to this argument.

---

[9] Prosecutorial vindictiveness may be found where a defendant is charged, or the charges against him are increased, in retaliation for the exercise of a constitutional right.  U.S. v. Thomas, 593 F.2d 615, 624 n. 28 (5th Cir.), on rehearing, 604 F.2d 450 (5th Cir. 1979), cert. den., 449 U.S. 841, 101 S.Ct. 120 (1980).  Jackson v. Walker, 585 F.2d 139, 145-148 (5th Cir. 1978).

Ground No. 9 - Termination of Co-Counsel

_____This issue was not briefed by Allen.  Therefore, it will not be considered by the court.

Ground No. 10 - Appointed Investigator

Allen   contends   the   trial   judge's   appointment   of   an inexperienced, unlicensed, and ineffective investigator, and his refusal to make funds available to Allen to hire the investigator of his choosing, violated Allen's rights to counsel and due process. Allen alleges the judge appointed Charles Phythian, an undergraduate college student who lived in a fraternity house and did not have an investigator's license, to assist Allen as his investigator.  Allen contends Phythian did not investigate the case competently.

Even assuming Allen's constitutional rights were violated by the trial judge when he appointed a college student to act as Allen's investigator, Allen does not allege what evidence a competent investigator would have found, how the lack of that evidence impacted his defense, and how that evidence would have changed the outcome of the case.  See Moreno v. Dretke, 362 F.Supp.2d 773, 811 (W.D.Tex. 2005), aff'd, 450 F.3d 158 (5th Cir. 2006), cert. den., 549 U.S. 1120, 127 S.Ct. 935 (2007).  The state court found Allen failed to show employment of a private investigator was necessary to his defense and, therefore, the fact that the investigator was unlicensed or performed poorly was irrelevant.  Allen, 95-1754 (La. 9/5/96), 682 So.2d 713.  When a

36

state court determines that a constitutional violation is harmless, a federal court may not award habeas relief unless the harmlessness determination itself was unreasonable.  Mitchell v. Esparza, 540 U.S. 12, 124 S.Ct. 7 (2003).  Since Allen has not alleged or shown specifically how not having an investigator prejudiced him at trial, this ground for relief is meritless.

Grounds Nos. 11-13 - Motion to Suppress

Allen argues the trial judge erroneously denied Allen's motion to suppress physical evidence and an inculpatory statement, both of which were fruits of an unlawful arrest and defective Miranda warnings, in violation of Allen's Fourth Amendment rights.

A federal district court presented with a habeas petition may not review the correctness of a state court decision not to exclude evidence allegedly obtained in violation of the Fourth Amendment. It may only reach the merits of the claim if it determines that the state has not provided the petitioner an opportunity for full and fair litigation of that claim.  Graves v. Estelle, 556 F.2d 743, 745 (5th Cir. 1977), citing Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037 (1976).  Also, Wallace v. Kato, 549 U.S. 384, 395 n.5, 127 S.Ct. 1091, 1099 n.5 (2007).  The "opportunity to litigate" is broader than a state court evidentiary hearing, and includes appellate review and other matters unrelated to the need for a state court hearing.  Mack v. Cupp, 564 F.2d 898, 901 (9th Cir. 1977).  If review of the state court record indicates that petitioner's Fourth

Amendment claims were not litigated, the district court must decide whether the state provided petitioner with the opportunity for full and fair litigation of his claims.  If such an opportunity existed, the claim must be dismissed.  <u>Doleman v. Muncy</u>, 579 F.2d 1258, 1263 (4th Cir. 1978).  Also, <u>Graves</u>, 556 F.2d at 745.

Allen had a pretrial hearing on his motion to suppress (Tr. Vol. 9, pp. 23-47), after which the trial judge denied his motion (Tr. Vol. 9, pp. 45-47).  The Louisiana Supreme Court reviewed this issue on direct appeal and found Allen was not under arrest at the time his vehicle was searched, he voluntarily consented to the search of his vehicle, he voluntarily accompanied the deputies to the substation, he was not under arrest when he was interviewed at the substation, and the search of his car and the confession obtained a day after he was questioned at the substation were not tainted by an illegal arrest.  <u>State v. Allen</u>, 682 So.2d at 719-720.

As to the <u>Miranda</u> warning, which was argued by counsel (Tr. Vol. 9.), the trial judge found that, although one sentence in the warning was incorrect standing alone (Tr. Vol. 9, pp. 45-46),

> "And I read that one sentence in the fourth (4th) paragraph which says, 'We have no way of furnishing you a lawyer, but one will be appointed for you, if you wish, if and when you go to court.'"

the sentences immediately following it clarified and corrected the point by stating (Tr. Vol. 9, p. 46),

> "If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time.  You also have the right to stop answering

at any time until you talk to a lawyer."

A waiver of the right to counsel, which states in part,

"I am willing to make a statement answer questions.  I do
not want a lawyer."

immediately followed the warning and bears Allen's witnessed
signature (Tr. Vol. 9, p. 46).  The trial judge found the warning
and waiver, read in their entirely, clearly conformed to Louisiana
law, and denied the motion to suppress (Tr. Vol. 9. pp. 46-47).

Since the state courts afforded Allen a full hearing on this
issue, both verbally and on direct appeal, this Fourth Amendment
issue is not properly before this court on habeas review.

Ground No. 14 - Defendant's Waiver of Right to Testify

Allen argues he did not knowingly and intelligently waive his
right to testify on his own behalf.  Specifically, Allen contends
he was not informed of his right to testify on his own behalf, did
not testify in his own behalf, and neither his attorney nor the
trial judge consulted him regarding his right to testify.

A defendant in a criminal proceeding has a fundamental
constitutional right to testify in his own defense.  Rock v.
Arkansas, 483 U.S. 44, 49-53, 107 S.Ct. 2704, 2708-10 (1987).  A
defendant can only waive his right to testify if that waiver is
knowing, intelligent and voluntary.  Emery v. Johnson, 139 F.3d 191,
198 (5th Cir. 1997), cert. den., 525 U.S. 969, 119 S.Ct. 418 (1998).
Counsel cannot override the ultimate decision of a defendant who
wishes to testify contrary to counsel's advice.  United States v.

39

Mullins, 315 F.3d 449, 453 (5th Cir. 2002), 541 U.S. 1031, 124 S.Ct. 2096 (2004).  In determining whether a defendant's right to testify was violated or waived by his silence during trial, the court consider: (1) absent extraordinary circumstances that should alert the trial court to a conflict between attorney and client, the court should not inquire into a criminal defendant's right to testify and should assume that a criminal defendant, by not "attempting to take the stand," has knowingly and voluntarily waived his right; (2) the defendant can only rebut the presumption that he waived his right to testify by showing that his attorney caused him to forego his right to testify by alleging specific facts, including an affidavit by the defendant's trial counsel, from which the court could reasonably find that trial counsel told defendant that he was legally forbidden to testify or in some similar way compelled him to remain silent, by demonstrating from the record that those specific factual allegations would be credible.  State v. Hampton, 2000-0522 (La. 5/22/02), 818 So.2d 720.  A trial judge has no duty to advise the defendant of his right to testify, or to ensure that an on-the-record waiver occurs.  State v. Shaw, 2006-2467 (La. 11/27/07), 969 So.2d 1233, 1246.

In the case at bar, Allen was not called to testify by his counsel, the trial judge did not ask Allen whether he wanted to testify, and Allen apparently did not attempt to testify by telling his counsel or the court that he wanted to do so.  Allen has not

submitted an affidavit or any other evidence to show his attorney caused him to forego his right to testify.  Since Allen has not carried his burden of proving he was denied his right to testify, this ground for relief is meritless.

Grounds Nos. 15 & 16 - Unrecorded Proceedings

_____Allen argues the trial judge's denial of his motion to continue in order to secure the presence of additional defense witnesses, at approximately 6 p.m. on the evening of the first and only day of trial, denied Allen his due process rights.  Allen further contends the trial judge's failure to record important proceedings, including an extensive argument on defense counsel's request for a continuance in order to secure two important defense witnesses, denied Allen his right to due process.

Allen has not specified which proceedings were not recorded,[10] other than the argument concerning his counsel's request for a continuance to secure two witnesses.  Allen also has not set forth the names of the two witnesses he was denied his right to call to testify (through denial of his motion for a continuance), what the substance of their testimony would have been, and how it would have aided his case.[11]

_____

[10] Allen's habeas counsel employed a forensic tape analyst who submitted an affidavit to show there are several places in which the trial recording was interrupted (Doc. 15, Ex. 4).

[11] It appears that Allen called three witnesses, Deputies McGaskey, Rachal, and Ebert, late in the day of trial (Tr. Vol. 4, p. 156).  Those witnesses had already testified and been

41

However, Allen again raises his claim that he was denied an opportunity to call Gabriel Clark, despite having asked for a continuance to do so.  Allen has not submitted an affidavit from his trial counsel to show that the trial judge denied him a continuance to call Clark.  The State's prosecutor, however, contends in his brief that the trial judge gave Allen an opportunity to continue the trial, so Clark's attorney could be present.  The recorded portion of the matter shows, as discussed above, that Allen failed to notify Clark's attorney that he had subpoenaed Clark.  Allen has not shown that Clark would have testified, instead of invoking his right against self-incrimination, or how Clark's testimony would have aided Allen's defense.

Therefore, Allen has failed to show, specifically, how he was prejudiced by the trial judge's failure to record the unspecified proceedings.  The mere fact that a sidebar or other argument outside the presence of the jury is unrecorded is not proof that crucial information or rulings are not in the record.  Vague and unsupported allegations do not entitle Allen to habeas relief.

Allen also requests further employment of the tape analyst to determine the "nature of the interruption[s]."  Since Allen has not

---

released; although the trial judge fussed at Allen's counsel about it, he had the deputies return to court to testify further on cross-examination (Tr. Vol. 4, pp. 156-159).  Argument on that matter was, obviously, recorded.  As discussed above, Allen also attempted to call Gabriel Clark to testify, but that argument also appears to have been recorded.

shown by his own affidavit or that of his trial attorney that anything crucial was not recorded, his request for further analysis of the tape should be denied.

This ground for relief lacks merit.

Ground No. 8 - Ineffective Assistance of Counsel

Allen contends he received ineffective assistance of counsel during the pretrial, trial, and direct appeal of his case. Allen submits the affidavits of Michele Fournet, proffered as an expert in reviewing the efficacy of counsel in criminal cases (Doc. 1, Appx. A, Ex. CC), and the affidavits of jurors Rhenda Cedars (Doc. 1, Appx. C, Ex. GG), James David Clark (Doc. 1, Appx. C, Ex. HH), and William J. Garland (Doc. 1, Appx. C, Ex. II) to prove his trial and appellate counsel, James Calhoun, was ineffective.

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show that his counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e., that errors by counsel "actually had an adverse effect on the defense). The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the

43

challenged action might be considered sound trial strategy.  On the latter component, it is not enough for the defendant to show the errors had some conceivable effect on the outcome of the proceeding; rather, he must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Anderson v. Collins, 18 F.3d 1208, 1215 (5th Cir. 1994), and cases cited therein.  Also, U.S. v. Segler, 37 F.3d 1131, 1136 (5th Cir. 1994).

As already discussed above, Allen has not proven the specified errors were committed by his attorney, Calhoun, or prejudice arising therefrom.  The opinions set forth in the affidavits of jurors Cedars, Clark, and Garland, who are unversed in the practice of criminal law, are inadequate to prove Calhoun provided Allen with ineffective assistance of counsel.

Michele Fournet states in her affidavit (Doc. 1, Appx. A, Ex. CC) that after reviewing an incomplete record on post-conviction relief, she believes Calhoun was ineffective in (1) failing to secure the assistance of additional counsel, (2) failing to conduct adequate voir dire, (3) failing to develop a consistent theme of mitigation in the penalty phase, (4) failing to investigate adequately both phases of trial, (5) failing to develop an adequate social history, (6) failing to prepare adequately the expert witness who testified at the penalty phase, and (8) failing to request essential special instructions from the court.

First, it is noted that Fournet's affidavit does not meet the requirements for qualifying Fournet as an expert.  Second, under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993), expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. Watkins v. Telsmith, Inc., 121 F.3d 984, 988-89 (5th Cir. 1997). In the case at bar, Fournet's unsupported allegations are inadequate to prove Calhoun gave ineffective assistance of counsel; her affidavit reflects only her opinions and provides no specific facts and evidence to support those opinions.  Moreover, Fournet fails to specify in her affidavit, and habeas counsel have not argued, how each deficiency alleged by Fournet adversely affected Allen's defense.  Allen has not shown that, had each alleged error not been made, there is a reasonable probability that the outcome of his trial would have been different.  Vague and conclusory allegations do not entitle Allen to habeas relief.

This ground for relief is also meritless.

Ground No. 17 - Cumulative Errors

Finally, Allen contends the cumulative effect of errors in Allen's case renders the guilty verdict unreliable.  Since, as discussed above, Allen has not proven the alleged errors occurred, this ground for relief is meritless.

45

Conclusion

_____Based on the foregoing discussion, IT IS RECOMMENDED that Allen's habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that Allen's request for further employment of the tape expert be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS  DONE  AND SIGNED at Alexandria, Louisiana, on this 15th day of December, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE